EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Firstbank Puerto Rico<br><br>Recurrente<br><br>v.<br><br>Registradora de la Propiedad de Ponce, Sección Ponce I, Hon. María Rodríguez Cintrón<br><br>Recurrida | Recurso Gubernativo<br><br>2021 TSPR 135<br><br>208 DPR ____ |

Número del Caso: RG-2020-5

Fecha: 17 de septiembre de 2021

Abogado de la parte peticionaria:

 Lcdo. José M. Biaggi Landrón

Registradora de la Propiedad de Ponce
Sección Ponce I:

 Hon. María Rodríguez Cintrón

Materia: Derecho Registral Inmobiliario: Inaplicabilidad del requisito de presentar copia física del documento calificado en el Registro de la Propiedad para perfeccionar un recurso gubernativo. Requisito de dar fe expresa en la escritura de modificación de que se tuvo ante sí el pagaré original de la hipoteca y de que se tomó razón de sus cambios, conforme dispone la Ley Hipotecaria.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Firstbank Puerto Rico<br><br>Recurrente<br><br>v.<br><br>Registradora de la Propiedad de Ponce, Sección Ponce I, Hon. María Rodríguez Cintrón<br><br>Recurrida | RG-2020-0005 | *Recurso Gubernativo* |

**Opinión del Tribunal emitida por el Juez Asociado señor RIVERA GARCÍA.**

En San Juan, Puerto Rico, a 17 de septiembre de 2021.

Hoy nos atañe primero arrojar luz sobre el proceso de perfeccionar un recurso gubernativo ante esta Curia bajo la *Ley del Registro de la Propiedad*, infra. En particular, debemos resolver si el Art. 245 de la referida ley, y la correlativa Regla 245.1, del Reglamento Núm. 8814, *infra*, requieren al notario remitir al Registrador de la Propiedad la **copia certificada original, en papel**, del documento *ya calificado*. Lo anterior para que este Tribunal pueda adquirir jurisdicción sobre un *Recurso Gubernativo*, **cuando dicho documento ya haya sido presentado inicialmente por la vía telemática.** Resolvemos que, conforme a la clara intención legislativa de hacer los procesos registrales más eficientes a través de la digitalización y el uso de la tecnología, y el consecuente diseño de la propia Ley Núm. 210-2015, *infra*, **dicho requisito es obsoleto por la duplicidad innecesaria que representa.**

Luego de resolver esta controversia jurisdiccional como cuestión de umbral, este recurso también nos brinda la oportunidad de expresarnos por primera vez en cuanto a los requisitos para la inscripción de una escritura de modificación de hipoteca y su interacción con la *Ley de Transacciones Comerciales*, infra. Aunque los argumentos de FirstBank de Puerto Rico (FirstBank o peticionario) aducen la apariencia de un conflicto novel entre dos leyes especiales, estos no son convincentes y resultan en una aplicación errónea del derecho.

En ese contexto, resolvemos que la Registradora actuó correctamente al denegar la inscripción de la escritura pública objeto de la controversia por no cumplir con el Art. 89 de la referida Ley Hipotecaria. Es decir, por no contener una dación de fe de que, al momento de otorgar la escritura de modificación de hipoteca, el notario autorizante tuvo ante sí el pagaré original objeto de la modificación.

Examinemos los antecedentes fácticos que dieron lugar a la controversia de autos.

## I.

La controversia ante nos se origina de la denegatoria de inscripción al Registro de la Propiedad de Puerto Rico, Sección de Ponce I, de la Escritura Núm. 86 de Modificación de Hipoteca, otorgada el 22 de noviembre de 2019 por FirstBank y su cliente, Delmar Investment, S.E. (Delmar),

ante el Notario José M. Biaggi Landrón (Notario Biaggi-Landrón). Dicha escritura se otorgó a los fines de darle publicidad registral a la modificación que las partes realizaron ese mismo día al pagaré hipotecario original para así extenderle una facilidad de crédito a Delmar y continuar su relación de negocios. En particular, mediante varios acuerdos privados suscritos,[1] las partes variaron la tasa de interés que devengaría dicho pagaré, y a su vez extendieron su fecha de vencimiento. Así, las partes modificarían un pagaré garantizado por hipoteca otorgada por Delmar en el 2003 e inscrita al Registro de la Propiedad para atemperarlo a los términos y condiciones del nuevo financiamiento. La escritura de modificación además suponía unos ahorros sustanciales a Delmar que de otro modo hubiese incurrido para cancelar esa hipoteca del 2003 y otorgar una nueva.[2]

Así las cosas, el 26 de noviembre de 2019 la referida escritura de modificación de hipoteca fue presentada al Registro de la Propiedad de Puerto Rico, Sección de Ponce I, mediante el Registro Inmobiliario Digital de Puerto Rico conocido como *Karibe*, solicitando inscripción al asiento 2019-125655-PO01.[3]

Luego de calificar la escritura pública presentada, el 6 de febrero de 2020 la Registradora de la Propiedad, la Hon.

---

[1] A saber, contratos de préstamo, contratos de cesión, contratos de gravamen mobiliario, entre otros.
[2] *Recurso Gubernativo*, pág. 2.
[3] Historial del Asiento, Apéndice del Recurso Gubernativo, pág. 12.

María Rodríguez Cintrón (Registradora), emitió una notificación al Notario Biaggi-Landrón informando la denegatoria de inscripción de la escritura. En ella, fundamentó que la escritura presentada no cumplía con el Art. 89 de la Ley Hipotecaria, *infra*.[4] Como veremos más adelante, este precepto exige al notario consignar en una escritura de modificación de hipoteca, el hecho que, al momento de otorgar dicha escritura, tuvo ante sí el pagaré objeto de la modificación. En este caso, la escritura presentada por el Notario Biaggi-Landrón no contenía la antedicha dación de fe.[5]

El 26 de febrero de 2020, y dentro del término jurisdiccional de veinte (20) días provisto por el Art. 241 de la Ley Hipotecaria,[6] el Notario Biaggi-Landrón oportunamente presentó a la Registradora de la Propiedad un escrito solicitando la recalificación de la escritura pública presentada.[7] En síntesis, sostuvo la preeminencia de la Ley de Instrumentos Negociables sobre la Ley Hipotecaria, razón por la cual, a su entender, basta con que una escritura que garantice un instrumento negociable cumpla con los requisitos de la primera para lograr acceso al Registro de la Propiedad.

---

[4] Carta de Notificación, Apéndice del Recurso Gubernativo, pág. 12.
[5] Véase Escritura Núm. 86, de Modificación de Pagaré y de Hipoteca, Apéndice del Recurso Gubernativo, págs. 4-7.
[6] Art. 241 de la Ley Núm. 210-2015, 30 LPRA sec. 6401.
[7] *Escrito de Recalificación*, Apéndice del Recurso Gubernativo, págs. 13-35.

Luego de evaluar el *Escrito de Recalificación*, el 29 de junio de 2020 la Registradora de la Propiedad notificó al Notario Biaggi-Landrón la denegatoria de la recalificación solicitada. En ella la Registradora insistió en que la escritura incumplía con el Art. 89 de la Ley Hipotecaria.[8]

Inconforme, FirstBank, por conducto del Notario Biaggi-Landrón, oportunamente interpuso un *Recurso Gubernativo* ante esta Curia el día 20 de julio de 2020 —dentro del término improrrogable de veinte (20) días que dispone el Art. 245 de la Ley Hipotecaria.[9] Así, el peticionario solicitó una revisión de la calificación final de la Registradora notificada el 29 de junio de 2020. Esto, con el fin de revocar la anotación preventiva de denegatoria de inscripción de la escritura de modificación al asiento presentado. En apretada síntesis, el peticionario argumenta que, al tratarse la escritura de un pagaré hipotecario, la Ley de Transacciones Comerciales (LTC)[10] rige el derecho aplicable para que un negocio jurídico privado logre acceso al Registro de la Propiedad. Ello, por tener preeminencia sobre los requisitos que establece la Ley Hipotecaria. En particular, aduce que como la LTC fue creada para fomentar el tráfico de instrumentos negociables, la Ley Hipotecaria quedaría desplazada por el principio de especialidad. Por lo tanto,

---

[8] Notificación de la Anotación de Denegatoria, Apéndice del Recurso Gubernativo, págs. 1-2.

[9] *Recurso Gubernativo*, págs. 22-25.

[10] Ley de Transacciones Comerciales, Ley Núm. 208-1995, 19 LPRA sec. 401 *et seq*.

esta última legislación estaría impedida de imponer requisitos adicionales en la medida en que estos entorpezcan el tráfico de esos instrumentos. Bajo ese supuesto, el peticionario solicita la inscripción de su escritura de modificación de hipoteca a pesar de no contener la dación de fe requerida por el Art. 89 de la Ley Hipotecaria. Es decir, que el notario autorizante no acreditó que tuvo el pagaré hipotecario original ante sí al momento de otorgar esta escritura.

Presentado el referido recurso, el 27 de julio de 2020, la Registradora compareció mediante una *Moción Informativa* en cumplimiento con la Regla 27 del Reglamento del Tribunal Supremo.[11] En ella anejó copia de los documentos siguientes requeridos por el Art. 245 de la Ley Hipotecaria, a saber: (1) **copia de la imagen del documento calificado y presentado por la vía electrónica y certificado por el Notario como idéntica a la copia certificada en papel regular;** (2) la notificación de defectos; (3) el Escrito de Recalificación de la parte interesada, y (4) copia de la anotación denegatoria y la notificación de la misma. Ahora bien, la Registradora sostuvo que el peticionario no le entregó el **original de la copia certificada de la escritura de modificación,** lo cual le impidió incluirlo en su *Moción Informativa* según le requiere el referido Art. 245. Cónsono

---

[11] *Moción Informativa al Amparo de la Regla 27 del Tribunal Supremo y Solicitando la Desestimación del Recurso*, Expediente, págs. 148-152.

con lo anterior, la Registradora arguyó que el *Recurso Gubernativo* no se perfeccionó debido a esta omisión del notario, por lo que este Tribunal carece de jurisdicción para atenderlo en sus méritos. En consecuencia, la Registradora solicitó la desestimación del recurso presentado por FirstBank por incumplir con el Art. 245 de la Ley Hipotecaria y la Regla 245.1 del Reglamento Núm. 8814, *infra*.

Por su parte, el 6 de agosto del 2020, FirstBank presentó ante nos un recurso en oposición a la moción de desestimación.[12] En este afirma que cumplió con los requisitos del Art. 245 de la Ley Hipotecaria pues primero notificó el *Recurso Gubernativo* mediante el sistema de informática registral *Karibe,* el mismo día que presentó el recurso. En igual fecha envió un aviso de radicación al correo electrónico de la Registradora, hecho constatado por la propia Registradora en las notas al diario del asiento de presentación.[13] Por último, el peticionario remitió por correo certificado al Registro de la Propiedad una copia del *Recurso Gubernativo* con acuse de recibo. En lo pertinente es menester resaltar que, en el Apéndice del *Recurso Gubernativo* presentado, el peticionario incluyó una copia de la referida

---

[12] *Moción en Oposición a Desestimación y Solicitud Urgente de Disposición Acelerada del Presente Recurso Gubernativo*, pág. 1.

[13] En las notas al diario del asiento 2019-125655-PO01, el último comentario que aparece en el sistema Karibe lee como sigue: "Se recibe Recurso Gubernativo presentado por el Lic. José M. Biaggi Ladrón, al correo electrónico de esta Registradora, María Rodríguez Cintrón, el día 20 de julio de 2020 a las 4:14PM". Esto, según anotado por el Registro de la Propiedad el 21 de julio de 2020, a las 9:22AM.

escritura.[14] Adicionalmente, argumenta **que de las disposiciones de ley que regulan la radicación del recurso gubernativo no surge claramente el requisito de entregar el original de la copia certificada del documento objeto de la calificación.** Sostiene que este es un documento con el cual la Registradora ya contaba desde que se presentó telemáticamente para su calificación inicial el 26 de noviembre de 2019, por lo que nada le impedía cumplir con los requisitos del Art. 245 de la Ley Hipotecaria, *infra*.

Posteriormente, el 10 de agosto de 2020, la Registradora presentó su *Alegato*.[15] En síntesis, sostuvo su denegatoria de inscripción en que el notario autorizante no dio fe de que tuvo ante sí e identificara el pagaré, adhiriendo el "allonge" y luego devolviendo el pagaré con el "allonge" al acreedor. Reitera que ante el incumplimiento con el requisito impuesto por el Art. 89 de la Ley Hipotecaria, *infra*, es improcedente la inscripción de la escritura número ochenta y seis (86).

Trabada así la controversia, procedemos a exponer el marco jurídico aplicable.

---

[14] *Recurso Gubernativo*, Apéndice, págs. 4-7.
[15] *Alegato de la Parte Recurrida*, Expediente, págs. 227-240.

## II.

### A.  Jurisdicción

La jurisdicción se refiere a la autoridad o poder que ostenta un tribunal para atender y decidir un caso o controversia.[16] Así, un tribunal sin jurisdicción estará impedido de entender en el asunto y cualquier dictamen que emita sobre este será nulo.[17] Es por esto que las cuestiones de jurisdicción son de índole privilegiada que deben ser resueltas con preferencia.[18]

### B.  Jurisdicción Gubernativa

En virtud del Art. 3.002(h) de la Ley Núm. 201-2003, también conocida como la *Ley de la Judicatura de Puerto Rico de 2003* (Ley de la Judicatura)[19], y conforme a la Regla 27 del Reglamento del Tribunal Supremo de Puerto Rico,[20] este Tribunal goza de jurisdicción para atender recursos presentados contra las calificaciones finales del Registro de la Propiedad que denieguen la solicitud de un asiento. En el pasado hemos expresado que el recurso gubernativo procede para revisar aquella calificación de un registrador que suspenda o deniegue la inscripción o anotación de un documento presentado para su registración. A esos efectos, hemos indicado que "[n]uestra jurisdicción gubernativa se

---

[16] *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 372 (2018).
[17] *Villanueva v. Hernández Class*, 128 DPR 618, 660 (1991).
[18] *Fuentes Bonilla v. ELA et al.*, supra, pág. 372.
[19] 4 LPRA sec. 24s.
[20] Ap. XXI-B, 4 LPRA, R. 27.

activa por recurso contra denegatoria o suspensión de la inscripción [...]".[21]

Ahora bien, para asumir nuestra jurisdicción gubernativa, la parte peticionaria "tiene que cumplir con las disposiciones legales y reglamentarias que ordenan cómo y cuándo se perfecciona el recurso".[22] Así, de incumplir con alguna, se privaría a este Tribunal de jurisdicción para considerarlo. Pasemos entonces a examinar las disposiciones pertinentes a la jurisdicción de esta Curia sobre los recursos gubernativos.

**C. Ley Hipotecaria y su Reglamento**

El Art. 3.002(h) de la Ley de la Judicatura establece que el Tribunal Supremo conocerá "[m]ediante **recurso gubernativo** de una calificación final de un Registrador de la Propiedad, denegando el asiento solicitado por el peticionario de conformidad con el término y los requisitos en la *Ley Núm. 198 de 8 de agosto de 1979*".[23] Es decir, la Ley de la Judicatura, así como el Reglamento d  este Tribunal expresamente nos remiten a los requisitos de la entonces vigente ley hipotecaria, conocida como "Ley Hipotecaria y del Registro de la Propiedad".[24] Aunque la *Ley Núm. 198 fue derogada, las referencias a ella tanto en la actual Ley de*

---

[21] *Housing Inv. Corp. v. Registrador*, 110 DPR 490, 502 (1980). Véase, también, *CRIM v. Registradora*, 193 DPR 943 (2015).
[22] *Toro Valcárcel v. Registradora*, 201 DPR 1073, 1077 (2019) (Voto particular de conformidad del Juez Asociado señor Colón Pérez).
[23] 4 LPRA sec. 24s.
[24] 30 LPRA sec. 2001, *et seq.* (derogada).

*la Judicatura como en el actual Reglamento del Tribunal Supremo,* son parcialmente letra muerta, toda vez que la referida Ley Núm. 198-1979 fue sustituida por la actual ley hipotecaria, Ley Núm. 210-2015, conocida como *Ley del Registro de la Propiedad Inmobiliaria de Puerto Rico* (Ley Hipotecaria).[25] De esta forma, los requisitos estatutarios actuales para radicar un recurso gubernativo ante esta Curia se encuentran en el Art. 245 de la Ley Núm. 210-2015, a saber:

> **El notario**, funcionario autorizado o el interesado, **podrá radicar recurso gubernativo ante el Tribunal Supremo de Puerto Rico dentro del término improrrogable de veinte (20) días a partir de la notificación de la denegatoria, y simultáneamente notificará al Registrador con copia del escrito.** Si el recurso es radicado por el notario o funcionario autorizado, **lo hará por la vía electrónica del sistema de informática registral. Dentro de este mismo término,** el notario o funcionario autorizado que radique el recurso **está obligado a entregar la copia certificada del documento que fue presentado, en su caso, por la vía electrónica y que es objeto del recurso.** De no cumplirse con este requisito, se entenderá que el notario o funcionario autorizado ha desistido y acepta como final la denegatoria de inscripción que le fue notificada. (Énfasis suplido).[26]

A su vez, la correlativa Regla 245.1 del Reglamento General para la Ejecución de la Ley del Registro de la Propiedad Inmobiliaria de Puerto Rico ("Reglamento Núm. 8814")[27] abunda sobre los requisitos del Art. 245, al disponer que

> **[t]oda notificación y envío de la copia del recurso gubernativo se hará por medio de la vía electrónica del**

---

[25] 30 LPRA sec. 6001 *et seq.*

[26] 30 LPRA sec. 6405.

[27] Registro de la Propiedad Inmobiliaria, Reglamento General para la Ejecución de la Ley del Registro de la Propiedad Inmobiliaria, Núm. 8814 (31 de agosto de 2016), págs. 58-59.

**sistema de informática registral como documento complementario del documento notificado.** La copia del recurso gubernativo deberá contener el sello de radicación del Tribunal Supremo de Puerto Rico. (. . . . . . .)

El recurso gubernativo y el aviso al Registrador tendrán que ser recibidos en el Registro en o antes de las 12:00 de la medianoche del último día del término correspondiente. **El Registro no recibirá copia de recursos gubernativos personalmente, excepto la copia certificada original del documento que fue presentado digitalmente** de conformidad con lo establecido en el Artículo 245 de la Ley, **la que se entregará en la sección del Registro correspondiente.** (Énfasis suplido).[28]

En síntesis, del referido estatuto y su reglamento se desprende que para presentar y perfeccionar un recurso gubernativo, un notario deberá realizar, dentro del término improrrogable de veinte (20) días a partir de la notificación de la denegatoria, lo siguiente: (1) radicar el recurso gubernativo **personalmente, en copia física**, en el Tribunal Supremo de Puerto Rico; (2) enviar al Registrador, a través del sistema de informática registral (actualmente, sistema *Karibe*), la **copia digitalizada** del recurso radicado en este Tribunal; y (3) entregar al Registrador, en su sección correspondiente, **la copia certificada <u>original</u> del documento que fue presentado digitalmente para ser calificado**, y que es objeto del recurso.

Este último requisito, de entregar personalmente la copia certificada <u>original</u> del documento, aplica únicamente cuando la escritura es presentada al Registro

---

[28] Íd.

de la Propiedad mediante el sistema telemático *Karibe* para ser calificada. Cabe destacar que, aunque "**[e]l Registro no recibirá copia de recursos gubernativos personalmente**" (Énfasis suplido)[29], **este documento es el único que el Registro <u>recibiría</u> personalmente**. Esto, a pesar de que una escritura presentada mediante el sistema telemático *Karibe* es susceptible de ser calificada para inscribir derechos reales al Registro sin requerir presentar su original en papel.[30] Por lo tanto, aunque no cabe duda de que en esos casos la copia certificada de dicho documento debe ser entregada físicamente al Registro, ciertamente este requisito **es obsoleto por la duplicidad innecesaria que representa y es contrario a** la intención legislativa de hacer los procesos registrales más eficientes a través de la digitalización y el uso de la tecnología.

Dado que el Art. 245 requiere una comunicación adicional con el Registro **luego** de presentar un recurso gubernativo, conviene repasar las disposiciones pertinentes a los trámites con el Registro en el curso ordinario. Esto, para evaluar el diseño del estatuto en su conjunto y el gran paso hacia la modernidad que representó la Ley Núm. 210-2015.

---

[29] Íd.
[30] Art. 258 de la Ley Núm. 210-2015, 30 LPRA 6431.

Primero, **la presentación de documentos ante el Registro de la Propiedad se refiere al "acto mediante el cual se recibe en el Registro un documento físico o su imagen digital**, con el propósito de solicitar su inscripción". (Énfasis suplido).[31] De esta forma, **"[l]os documentos se podrán presentar de forma presencial o digitalmente a través del sistema de informática registral telemática.** (Énfasis suplido).[32] Es decir, aunque históricamente la presentación de documentos al Registro era exclusivamente en papel, la Ley Núm. 210-2015 añadió la novel alternativa de presentarlos electrónicamente. Más aún, **"[l]a presentación telemática de documentos podrá efectuarse durante las veinticuatro (24) horas los siete (7) días de la semana"**. (Énfasis suplido).**[33]**

Por su parte, el Art. 260 añade que la presentación telemática de documentos únicamente es permitida a los notarios o funcionarios autorizados, en cuyo caso estos deben acompañar el documento presentado con una **certificación expresando que el documento es una copia fiel y exacta de la copia certificada de dicho documento.**[34] Por lo tanto, conforme al Art. 260 de la Ley Hipotecaria, cuando el notario presenta por la vía electrónica el documento cuya inscripción se

---

[31] Íd.
[32] Art. 259 de la Ley Núm. 210-2015, 30 LPRA 6432.
[33] Íd.
[34] 30 LPRA sec. 6431.

procura —que en sí es una copia certificada del documento que se encuentra en el protocolo del notario— deberá, además, someter por la vía electrónica la certificación de que éste es una copia fiel y exacta de la copia certificada de dicho documento.

Por otro lado, cuando el Registrador determine que existe un defecto en el documento que impida su inscripción, "**[l]a notificación se hará por escrito a través del sistema de informática registral, a la dirección de correo electrónico provista al momento de la presentación del documento**". (Énfasis suplido).[35] De igual forma, cuando la parte no esté conteste con una notificación, **<u>únicamente</u> podrá presentar un escrito de recalificación por la vía electrónica del sistema de informática registral.**[36] Tal es la magnitud de la modernización de nuestro sistema registral inmobiliario que, a partir de la Ley Núm. 210-2015, "**<u>[t]oda</u> la información de los libros oficiales del Registro se almacenará de forma electrónica** en el sistema de informática del Registro de la Propiedad".[37]

En su Exposición de Motivos, la Asamblea Legislativa plasmó claramente sus principales preocupaciones y motivaciones al adoptar la Ley Núm. 210-2015, a saber:

**...aceptar el reto que supone una transformación legal y tecnológica del derecho inmobiliario y del Registro de la Propiedad de Puerto Rico.** Más, cuando según la

---

[35] Art. 236 de la Ley Núm. 210-2015, 30 LPRA 6388.
[36] Art. 241 de la Ley Núm. 210-2015, 30 LPRA 6401.
[37] Art. 251 de la Ley Núm. 210-2015, 30 LPRA 6414.

publicación "Doing Business" del "World Bank Group" del año 2014, Puerto Rico ocupa el lugar número 163 de un total de 189 países, en lo que se refiere al estado actual de su sistema de registro de bienes inmuebles. Un país como el nuestro, donde son valores supremos el respeto a la dignidad humana, el derecho a la vida, la libertad y el disfrute de la propiedad, **no puede continuar** permitiendo que el organismo principal del gobierno que ofrece certeza al tráfico jurídico de los bienes inmuebles y que declara ante el mundo quienes son los titulares o propietarios de los derechos, actos y contratos que recaen sobre esos bienes, continúe **operando como lo hacía en el Siglo 19**. Por ello, desde septiembre del 2013, se comenzaron los esfuerzos para transformar definitivamente al Registro de la Propiedad mediante la incorporación de la más moderna tecnología, la creación de un sistema registral 100% digitalizado y electrónico, la adopción de una nueva ley de aranceles y, sobre todo, de la adopción de una nueva ley de derecho inmobiliario y registral que fuera punta de lanza y zapata jurídica de todo lo anterior. Este esfuerzo culmina con la adopción de esta 'Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico'. ...

Con esta nueva Ley, Puerto Rico pasa a **ocupar uno de los primeros lugares del mundo en esta área del derecho privado** que tanto afecta el desarrollo económico de un país. (Énfasis suplido).[38]

Al remitirnos a la Exposición de Motivos de la Ley Hipotecaria, observamos que el legislador le confirió énfasis sustancial al uso de la tecnología en el Registro. En consideración a esta intención legislativa, así como el diseño del estatuto propiamente, este Tribunal recientemente enfrentó una controversia similar respecto al Art. 245.

En lo pertinente a nuestra controversia, los requisitos del Art. 245 de la Ley Hipotecaria fueron discutidos en el voto particular de conformidad emitido en *Toro Valcárcel v. Registradora*, 201 DPR 1073 (2019). Allí, el referido recurso

---

[38] Exposición de Motivos, Ley Núm. 210-2015.

fue enviado a un correo electrónico de un empleado del Registro de la Propiedad, distinto al de la Registradora, cuando debió ser enviado al correo electrónico de esta.[39] Al evaluar si el peticionario cumplió con la notificación al Registrador requerida por el Art. 245, se consideró que la Regla 236.3 del Reglamento Núm. 8814, *supra*, dispone que "[b]ajo ningún concepto se podrá notificar acción registral alguna si no es por la vía electrónica [...]". Así, razonó que "[e]ste requerimiento evidentemente responde al espíritu y propósito de la Ley Núm. 210-2015, mediante la cual se procuró instituir en nuestra jurisdicción un sistema registral moderno 100% digitalizado y electrónico [...]".[40] De este modo, "el nuevo ordenamiento registral inmobiliario prescinde del uso del papel e incorpora el uso de plataformas electrónicas como una herramienta eficaz y confiable para la presentación y notificación de documentos. Cualquier transacción ante el Registro de la Propiedad deberá cumplir cabalmente con las disposiciones legales y reglamentarias vigentes que han sustituido el uso del papel por plataformas electrónicas. **Por tal razón, todo [notario] que comparezca ante el [R]egistro deberá notificar sus escritos por la vía electrónica dentro del término que la ley disponga para esto**".[41]

---

[39] Íd., en la pág. 1080.
[40] Exposición de Motivos, Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210-2015, 30 LPRA sec. 6001 *et seq*.
[41] *Toro Valcárcel v. Registradora*, supra, págs. 1078-79.

Por otra parte, el valor incalculable que representa un sistema registral electrónico quedó aún más patente desde que la pandemia del Coronavirus (Covid-19) devastó el mundo en Marzo del 2020, interrumpiendo los servicios públicos que no contaban con una alternativa electrónica.[42] A pesar de que las oficinas del Registro de la Propiedad permanecieron cerradas al público, mediante el sistema *Karibe* continuaron recibiendo presentaciones de documentos de forma electrónica.[43]

## D. Aplicación

En primer lugar, nos compete resolver si el peticionario cumplió con los requisitos establecidos por ley para entablar un recurso gubernativo. Esto pues, de ser acertado el planteamiento aducido por la Registradora, ello implicaría la falta de jurisdicción gubernativa de este Tribunal para atender el recurso. Adelantamos que el peticionario cumplió con los requisitos estatutarios. Veamos.

Cónsono con el estado de derecho que se viabilizó mediante la Ley Núm. 210-2015, este Tribunal "no puede continuar permitiendo que el organismo principal del gobierno que ofrece certeza al tráfico jurídico de los bienes

---

[42] Orden Ejecutiva de la Gobernadora de Puerto Rico, Hon. Wanda Vázquez Garced, para viabilizar los cierres necesarios gubernamentales y privados para combatir los efectos del coronavirus (covid-19) y controlar el riesgo de contagio en nuestra isla, OE-2020-023 (15 de marzo de 2020).

[43] Registro de la Propiedad anuncia cierre temporal al público, Caribbean Business, 16 de Marzo de 2020, https://cb.pr/registro-de-la-propiedad-anuncia-cierre-temporal-al-publico/?cn-reloaded=1 (última visita 28 de mayo de 2021).

inmuebles y que declara ante el mundo quienes son los titulares o propietarios de los derechos, actos y contratos que recaen sobre esos bienes, continúe operando como lo hacía en el Siglo 19".[44]

En el presente caso la Registradora solicita la desestimación del *Recurso Gubernativo* presentado por el peticionario por falta de jurisdicción dado que al incumplir con el Art. 245 de la Ley Hipotecaria y la Regla 245.1 del Reglamento, el mismo no se perfeccionó. Ello, por el peticionario no haber presentado en persona al Registro de la Propiedad el original de la copia certificada de la escritura de modificación de hipoteca, inmediatamente después de presentar su *Recurso Gubernativo* y dentro del término aplicable. Es decir, **la misma copia certificada que el peticionario había previamente presentado por el sistema telemático *Karibe* para iniciar el proceso de calificación registral***.* Como consecuencia, la Registradora sostiene que este incumplimiento provoca que la Registradora no pueda cumplir fielmente con lo dispuesto en la Regla 245.2 del Reglamento, de presentar ante esta Curia, el original de la copia certificada del documento objeto del recurso. .[45] **No le asiste la razón. Veamos.**

En primer lugar, el Art. 245 dispone que el notario deberá "entregar la copia certificada del documento que fue

---

[44] Exposición de Motivos, Ley Núm. 210-2015.
[45] *Moción Informativa*, Expediente, págs. 148-149.

presentado, en su caso, por la vía electrónica y que es objeto del recurso". Este documento es uno con el que ya cuenta el Registro, pues el Art. 260 de la Ley Hipotecaria así lo requiere al momento de presentar la solicitud de inscripción. Por lo tanto, si el notario presentó el documento por la vía electrónica —como ocurrió en este caso— ya el Registro cuenta con una copia certificada del documento presentado y la certificación de que dicho documento es una copia fiel y exacta a la copia en papel que tiene el notario en su protocolo. Por consiguiente, exigir que el notario presente nuevamente una copia certificada del documento en papel resulta en una redundancia totalmente contraria a los propósitos de la nueva Ley Hipotecaria.

Cuando un Registrador de la Propiedad recibe un documento a través del sistema *Karibe* para ser calificado, y posteriormente lo recibe nuevamente por la referida aplicación digital al ser notificado de un recurso gubernativo, está impedido de alegar que no recibió la copia certificada del documento **que ya fue calificado**, y solicitar la desestimación de un Recurso Gubernativo. El razonamiento para ello es porque "[t]oda la información de los libros oficiales del Registro se almacenará de forma electrónica en el sistema de informática del Registro de la Propiedad". [46]

---

[46] Art. 251 de la Ley Núm. 210-2015, 30 LPRA sec. 6414.

Es decir, **el Registrador ya cuenta con el documento que fue calificado y que luego es objeto de un recurso gubernativo.**

Por otro lado, la interpretación que sostiene la Registradora es contraria **al diseño estatutario y al conjunto de sus disposiciones.** Como vimos, los preceptos pertinentes de la Ley Núm. 210-2015 no solo brindan una alternativa de comunicación electrónica, como en el caso de las presentaciones al Registro bajo el Art. 258,[47] sino que <u>todos</u> los trámites posteriores con el Registro se llevan a cabo de forma electrónica, comenzando por la **notificación** de denegatoria de inscripción bajo el Art. 236, [48] seguido por el escrito de **recalificación** bajo el Art. 241,[49] y su correspondiente **notificación** de denegatoria de recalificación, [50] y culminando con el **recurso gubernativo bajo el Art. 245 y la Regla 245.1 del Reglamento Núm. 8814,** *supra.*[51] Debemos puntualizar que la Regla 245.1 expresa que

---

[47] "Los documentos se podrán presentar de forma presencial o digitalmente a través del sistema de informática registral telemática". 30 LPRA sec. 6431.

[48] "Cuando el Registrador determine que existe un defecto en el documento que impida su inscripción, notificará su calificación dentro del término de noventa (90) días laborables, a partir de la fecha del asiento de presentación. La notificación se hará por escrito a través del sistema de informática registral, a la dirección de correo electrónico provista al momento de la presentación del documento". 30 LPRA sec. 6388.

[49] "Los notarios y funcionarios autorizados únicamente podrán hacerlo por la vía electrónica del sistema de informática registral". 30 LPRA sec. 6401.

[50] "Cuando el Registrador determine que existe un defecto en el documento que impida su inscripción, notificará su calificación dentro del término de noventa (90) días laborables, a partir de la fecha del asiento de presentación. La notificación se hará por escrito a través del sistema de informática registral, a la dirección de correo electrónico provista al momento de la presentación del documento". 30 LRPA sec. 6388.

[51] "[t]oda notificación y envío de la copia del recurso gubernativo se hará por medio de la vía electrónica del sistema de informática registral como documento complementario del documento notificado. … El Registro no recibirá copia de recursos gubernativos personalmente…".

los recursos y avisos al Registrador no se recibirán después de la medianoche del último día del término correspondiente. No hay duda de que este horario se debe referir a un sistema de entrega electrónico, pues queda fuera del horario de operación del Registro de la Propiedad.

Por último, concluir que un peticionario tiene que personarse al Registro de la Propiedad solamente para entregar la copia certificada de una escritura, cuando todos los otros trámites con el Registro hayan sido de forma electrónica, es una exigencia contraria a **la intención expresa del legislador** de crear un ordenamiento registral electrónico. Como consecuencia colateral, perpetuaría la duplicidad innecesaria de procesos que plaga al aparato gubernamental y que incide sobre la eficiencia en los servicios a la ciudadanía por lo que no puede ser su interpretación más sensata. Para que Puerto Rico pase a ocupar uno de los sitiales del mundo en esta área del derecho privado y que aporte significativamente al desarrollo económico del país, debemos apartarnos de requisitos anacrónicos.

Conforme hemos enunciado, para perfeccionar un recurso gubernativo ante este Tribunal, se debe: (1) presentar el recurso propiamente en la secretaría de este Tribunal; (2) enviar al Registrador la copia del recurso gubernativo a través del sistema Karibe, como documento complementario del

documento notificado [52]; y (3) entregar al Registrador la copia certificada original del documento que fue presentado digitalmente para ser calificado. **Ahora bien, sobre este último requisito, resolvemos que el Art. 245 y su correlativa Regla 245.1 del Reglamento no requieren la entrega de la copia física original de dicho documento en el Registro de la Propiedad, cuando la misma haya sido presentada electrónicamente junto a su certificación bajo el Art. 260.** De igual forma, resolvemos que un Registrador podrá dar cumplimiento a lo requerido por la Regla 245.2 del Reglamento al presentar ante esta Curia una copia del documento que le fue presentado por la vía telemática para ser calificado. De esta forma logramos armonizar las distintas disposiciones de la Ley Hipotecaria, su reglamento y los propósitos consignados por la Asamblea Legislativa en la Exposición de Motivos.

En este caso el 26 de noviembre de 2019 el peticionario presentó al Registro de la Propiedad la Escritura Núm. 86, de Modificación de Hipoteca, mediante el sistema de informática registral *Karibe,* así solicitando inscripción al asiento 2019-125655-PO01. Junto al documento presentado este acompañó una certificación expresando que el documento es una copia fiel y exacta de la copia certificada de dicho documento, en cumplimiento con el Art. 260.[53] Luego de recibir

---

[52] Art. 245 de la Ley Núm. 210-2015, 30 LPRA sec. 6405.
[53] 30 LPRA sec. 6431.

la notificación de denegatoria de inscripción, el 26 de febrero de 2020 el peticionario oportunamente presentó su escrito de recalificación, también mediante *Karibe*. Luego de la Registradora insistir en su denegatoria, el peticionario presentó su *Recurso Gubernativo* en este Tribunal el día 20 de julio de 2020. Por último, y dentro del mismo término aplicable, el peticionario notificó copia de dicho recurso al Registro a través de la aplicación registral *Karibe*, documento al cual se aneja una copia de la escritura objeto de la calificación.[54] Todos estos documentos fueron incluidos por la Registradora como anejos a su moción informativa y solicitud de desestimación. Por lo tanto, al instar el presente recurso gubernativo, FirstBank no tenía que presentar una copia física de la escritura de modificación en la sección correspondiente del Registro, pues fue suficiente que notificara una copia del recurso gubernativo por la vía electrónica al Registro conforme al Art. 245, y anejara la copia de la escritura junto a la certificación que exige el Art. 260 de la Ley Hipotecaria. Al así hacerlo, colegimos que el peticionario cumplió con todas las disposiciones legales y reglamentarias que rigen el perfeccionamiento del recurso. En consecuencia, el *Recurso Gubernativo* quedó perfeccionado. Por su parte, bastaba con que la Registradora remitiera a esta Curia una copia del

---

[54] Además, en este caso, no podemos obviar el hecho que el peticionario presentó su recurso gubernativo en junio de 2020 estando el país sumido en plena pandemia.

documento que le fue presentado por la vía telemática para ser calificado, para así dar cumplimiento a lo requerido por la Regla 245.2 del Reglamento.

Atendido el asunto jurisdiccional, procedemos a resolver en los méritos la controversia jurídica.

**III.**

**A. Instrumentos Negociables**

La rama del derecho que regula el tráfico de instrumentos negociables se conoce comúnmente como el derecho cambiario. En general, los instrumentos negociables son documentos de crédito que le confieren a su titular el derecho a recibir un pago o contraprestación a cambio de su transmisión.[55] Su utilidad estriba en que sirven como método de pago alterno a la moneda de curso legal o al dinero en efectivo, por lo que su uso ha proliferado para facilitar la compraventa de mercancías y otras transacciones comerciales. Un ejemplo común de instrumentos negociables son los cheques, ya sean personales, de gerente, certificados, y otros.

En Puerto Rico la primera ley adoptada para regular el Derecho Cambiario provino del Código de Comercio español de 1889.[56] Este cuerpo de ley especial, apoyado por las disposiciones del Código Civil de forma supletoria, reglamentaba los actos de comercio y los contratos

---

[55] M.R. Garay Aubán, *Derecho Cambiario*: *Instrumentos Negociables*, San Juan, 2009, pág. 1.
[56] *COSSEC et al. v. González López et al.*, supra, pág. 800.

mercantiles.[57] En el año 1930, el antiguo Código de Comercio fue enmendado por la *Ley Uniforme de Instrumentos Negociables de Puerto Rico*[58] para atemperarla a la nueva legislación modelo estadounidense. De hecho, la entonces *Negotiable Instruments Law* (NIL), promulgada por el *National Conference of Commissioners on Uniform State Laws* en 1896, fue la primera legislación modelo en ser promulgada en Estados Unidos y [59] para el año 1924, la NIL había sido adoptada en cada estado de la Unión. Posteriormente, a partir del 1952 la *American Law Institute (ALI)* y la American Bar Association (ABA), promulgaron el famoso *Uniform Commercial Code* (UCC) con el propósito de corregir lagunas y defectos en la redacción de la legislación anterior y unificar otros aspectos del Derecho Mercantil.[60] De igual forma, la llegada del UCC inició un movimiento de uniformidad jurídica en los Estados Unidos y hoy día es la legislación modelo más extensa que se ha promulgado. Desde su adopción inicial en Pennsylvania en 1954 al presente, el UCC se ha convertido en la ley comercial fundamental en cada uno de los 50 estados de la Unión.[61]

En aras de continuar uniformando el derecho mercantil nacional para así fomentar el comercio, a través del siglo el UCC modelo recibió importantes revisiones de forma

---

[57] Íd.

[58] Ley Uniforme de Instrumentos Negociables de Puerto Rico, Ley Núm. 17 de 22 de abril de 1930 (derogada).

[59] William O. Morris, Negotiable Instruments Law Under the Uniform Commercial Code, pág. 457 (July 1962).

[60] M.R. Garay Aubán, *op. cit.*, págs. 25-26.

[61] W. O. Morris, *op. cit.*, págs. 457-458.

periódica que los estados a su vez fueron incorporando gradualmente a su legislación estatal cambiaria. Así, en el 1995, la Legislatura de Puerto Rico aprobó la entonces *Ley de Instrumentos Negociables y Transacciones Bancarias*,[62] adoptando casi *ad verbatim* las disposiciones del UCC con el fin de colocarnos en paridad cambiaria con los demás estados de la nación que en su mayoría habían adoptado el UCC.[63] Dicha ley ha sido objeto de múltiples enmiendas, entre las cuales se actualizó su nombre a *Ley de Transacciones Comerciales* (LTC).[64] En lo pertinente a esta controversia, los capítulos dos y tres de la LTC contienen las disposiciones que regulan los instrumentos negociables y cobros bancarios.[65]

Según hemos examinado anteriormente, un instrumento negociable es un documento de crédito que le confiere a su titular el derecho a recibir un pago o contraprestación a cambio de su transmisión.[66] En particular, la sección 2-104(a) de la LTC define un instrumento negociable como:

> [. . .] una promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden, si el mismo:
> (1) Es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de su tenedor;
> (2) Es pagadero a la presentación o en una fecha específica; y

---

[62] Ley Núm. 208, 17 de Agosto de 1995, 19 LPRA sec. 401, *et sec*.
[63] Íd., Exposición de Motivos.
[64] Ley Núm. 241, de 19 de septiembre de 1996.
[65] M.R. Garay Aubán, *op. cit.*, pág. 24.
[66] *Cruz Consulting v. El Legado et al.*, 191 DPR 499 (2014) (*citando* a M.R. Garay Aubán, Derecho cambiario de Estados Unidos y Puerto Rico, Ponce, Ed. Revista de Derecho Puertorriqueño, 1999, pág. 1).

(3) No especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero [...].[67]

Es decir, un instrumento negociable es un negocio jurídico relativamente sencillo producto de un acuerdo entre partes, sin requisitos particulares de forma más allá del contenido requerido por la LTC. Por ende, este negocio jurídico es susceptible de una novación por acuerdo entre sus partes. En la actualidad los instrumentos negociables más comunes, además de cheques, incluyen los giros, certificados de depósitos, y particular a nuestra controversia, los pagarés.[68]

Aunque existen varios tipos de instrumentos de pago, conforme a la sección 2-104(e) de la LTC,[69] **un instrumento negociable es un pagaré** cuando en el mismo hay un "compromiso escrito de pagar el dinero suscrito por la persona que se obliga a pagar".[70] Más aún, **cuando una promesa de pago a su vez es respaldada por una garantía real sobre propiedad inmueble, se trata de un pagaré hipotecario.** De esta forma, aunque no todos los pagarés son hipotecarios, un pagaré hipotecario es un tipo de instrumento negociable regulado por la LTC,[71] que se encuentra entre los más utilizados.[72] **No obstante, aunque la LTC regula los aspectos que conciernen**

---

[67] 19 LPRA sec. 504(a)(1)-(3).
[68] *COSSEC et al. v. González López et al.*, 179 DPR 793, 799 (2010).
[69] 19 LPRA sec. 504(e).
[70] Véase *Soto Solá v. Registradora*, 189 DPR 653, 663 (2013).
[71] *DLJ Mortgage v. SLG Santiago-Ortiz*, 202 DPR 950, 963 (2019).
[72] *COSSEC et al. v. González López et al.*, supra, pág. 799.

**al pagaré *per se* ⸺es decir, el negocio jurídico de garantía personal que sirve de base para la garantía real⸺ la LTC nada dispone sobre cómo se logra acceso al Registro de la Propiedad de aquellas garantías reales que proponen los pagarés hipotecarios.**

Una vez creado un instrumento negociable, sea o no hipotecario, la LTC permite su modificación mediante acuerdo entre el deudor y la persona con derecho a exigir el cumplimiento del instrumento.[73] Si se realiza un cambio no autorizado por estas personas ocurre una alteración, en cuyo caso la LTC releva de responsabilidad a la parte cuya obligación es afectada por la alteración.[74] Por lo tanto, para modificar un pagaré es necesario el consentimiento de todas las partes.[75] Ahora bien, cuando se trate de un pagaré hipotecario, las modificaciones que se hagan al pagaré mediante contratos privados en nada inciden sobre la publicidad en el Registro necesaria para que dichas modificaciones tengan eficacia real, y efecto *erga omnes* ⸺es decir, oponible frente a terceros.[76] Para que las modificaciones a un pagaré hipotecario se constituyan propiamente sobre un bien inmueble y además tengan publicidad

---

[73] Sec. 2-117 de la Ley Núm. 208-1995, 19 LPRA sec. 517.
[74] Sec. 2-407 de la Ley Núm. 208-1995, 19 LPRA sec. 657.
[75] *Soto Solá v. Registradora*, supra, pág. 664 (*citando a* L.M. Negrón Portillo, *Derecho cambiario de Puerto Rico: Instrumentos negociables*, 1995, pág. 14).
[76] *Soto Solá v. Registradora,* supra, pág. 669.

registral, es necesario cumplir con la legislación especial que regula el Registro de la Propiedad.

## B.   Constitución y Modificación de Hipoteca

En nuestro ordenamiento la hipoteca es un derecho real de naturaleza accesoria e indivisible, y de constitución registral.[77] Se trata de una obligación accesoria que garantiza una obligación pecuniaria personal y recae sobre bienes inmuebles que permanecen en posesión del propietario o titular.[78] Por lo tanto, es una obligación real, distinta a la obligación principal, aunque no independiente, pues la hipoteca subsiste mientras tenga vigencia el crédito garantizado.[79]

Al ser un derecho real de carácter constitutivo, para que la hipoteca quede válidamente constituida y advenga a la vida jurídica, es indispensable que sea inscrita en el Registro de la Propiedad.[80] Es mediante la inscripción que se produce la garantía de crédito con trascendencia real y se promulga su eficacia *erga omnes*.[81] En términos simples, sin el acto de inscripción no existe la hipoteca, ni como derecho

---

[77] *Dist. Unidos Gas v. Sucn. Declet Jiménez*, 196 DPR 96, 110 (2016). L.R. Rivera Rivera, *Derecho registral inmobiliario puertorriqueño*, 3ra ed., San Juan, Jurídica Editores, 2012, pág. 485.

[78] Íd.

[79] *Dist. Unidos Gas v. Sucn. Declet Jiménez*, supra, pág. 111.

[80] Art. 1774 del Código Civil, 31 LPRA sec. 5042. Véase el art. 1014 del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 8734.

[81] *Dist. Unidos Gas v. Sucn. Declet Jiménez*, supra, pág. 111. A.C. Gómez Pérez y otro, *Derecho Registral Inmobiliario*, 83 Rev. Jur. UPR 879, 882 (2014).

real ni como derecho personal.[82] Por lo tanto, quien interese contar con un derecho de hipoteca sobre un bien inmueble, debe cumplir con las disposiciones pertinentes de la Ley Hipotecaria respecto a su presentación e inscripción.

Una vez inscrito el derecho real de hipoteca, la Ley Hipotecaria permite su modificación posterior. De esta forma, una vez la modificación quede inscrita al Registro, la misma surtirá efectos contra terceros.[83] Por lo tanto, para modificar una hipoteca es necesario hacerlo constar por escritura pública.

Conforme al Art. 89 de la Ley Hipotecaria, en una escritura de modificación "el notario autorizante deberá hacer constar **que tuvo ante sí los instrumentos y que tomó razón en ellos de los cambios efectuados**".[84] El referido artículo es un requisito nuevo de la Ley Núm. 210-2015 que no existía en la anterior ley hipotecaria. No obstante, podemos deducir que, si el derecho real de la hipoteca es constitutivo —es decir, adviene a la vida jurídica una vez inscrito en el registro de la propiedad— es lógico que los requisitos para modificarla sean cónsonos con los requisitos para darle vida inicialmente. Es decir, que conste en

---

[82] L.R. Rivera, op cit., pág. 44.
[83] Art. 85 de la Ley Núm. 210-2015, 30 LPRA sec. 6112.
[84] 30 LPRA sec. 6116.

escritura pública ante notario y sea presentado e inscrito al registro de la propiedad.[85]

Abundando sobre los requisitos del Art. 89, su correlativa Regla 89.1 del Reglamento Núm. 8814, *supra*, dispone particularmente que

el otorgante **exhibirá el instrumento al notario**, quien insertará la correspondiente nota de liberación, permuta, posposición, novación o **modificación** sobre la faz del mismo instrumento. En caso de no haber espacio disponible en el instrumento, se hará la nota correspondiente en un "allonge" adherido permanentemente al instrumento. **De todo lo anterior el notario dará fe en la escritura.**[86]

## C. Aplicación

En el caso de marras el peticionario aduce que erró la Registradora al basarse en el incumplimiento de la Ley Hipotecaria para denegar la inscripción de la escritura de modificación. Este sostiene que al ser la LTC la ley especial que regula los instrumentos negociables, resulta suficiente cumplir sus disposiciones para solicitar la inscripción de un instrumento negociable en el Registro de la Propiedad. Es decir, las disposiciones de la Ley Hipotecaria quedan desplazadas por esta ley especial, por lo que no le son de aplicación. **No le asiste la razón.**

---

[85] *Véase* el Índice y Tabla de Equivalencias del Art. 323, Ley Núm. 210-2015.

[86] Íd.

Específicamente, el peticionario arguye los requisitos de la Sec. 2-117 de la LTC son los únicos que debe cumplir para inscribir una modificación de pagaré hipotecario e hipoteca en el Registro de la Propiedad y no el Art. 89 de la Ley Hipotecaria, como aduce la Registradora. En sustento de su posición, el peticionario señala dos opiniones de esta Curia, a saber: *Soto Solá v. Registradora*, supra; y *Cruz Consulting v. El Legado et al.*, supra.

Primero, en *Soto Solá v. Registradora,* supra, examinamos si un pagaré hipotecario vencido, pero aún vigente, podía ser modificado por acuerdo entre las partes para extender su fecha de vencimiento. Aun cuando un pagaré ha vencido, resolvimos que este continúa siendo negociable y puede ser modificado mediante contrato, conforme a las disposiciones de la LTC. Ahora bien, aclaramos que **estas modificaciones no surtirán efecto contra terceros hasta que se inscriban en el registro de la propiedad.**[87] Esto, pues la inscripción al registro de estas modificaciones es regulada por la Ley Hipotecaria y no por la LTC.

Por otro lado, en *Cruz Consulting v. Legado*, supra, la controversia versaba sobre si un agente o representante de un tercero respondía personalmente por firmar un pagaré en nombre del representado, conforme a la LTC. Allí expresamos que los instrumentos negociables se rigen en primer lugar

---

[87] *Soto Solá v. Registradora*, supra, pág. 669.

por la LTC por ser la ley especial. A su vez, cuando la LTC no dispusiera de una controversia, se acudiría de manera supletoria a los principios generales del derecho y al Código Civil.[88] Estas expresiones se refieren a la ley aplicable a las obligaciones evidenciadas por un pagaré. Sin embargo, no se refieren, como en el presente caso, a la ley aplicable cuando se pretende la inscripción de una escritura de modificación de hipoteca. Ambas leyes regulan materias distintas: la LTC, entre otras cosas, regula el tráfico comercial de los instrumentos negociables; mientras, la Ley Hipotecaria, en lo aquí pertinente, regula los requisitos y procedimientos que se deben llevar a cabo para inscribir derechos en el Registro de la Propiedad.

Por último, el peticionario entiende que con la aprobación de la nueva Ley Hipotecaria nuestra Asamblea Legislativa "**erróneamente** […] impuso una prohibición a toda transacción que envuelva [p]agarés [h]ipotecarios hasta tanto en el acto de otorgamiento de la escritura correspondiente se acredite la posesión física e inmediata del instrumento en cuestión y el mismo se haga disponible al Notario otorgante". (Énfasis suplido).[89] Además, propone que la legislación hipotecaria "**impropiamente añade** […] el requisito adicional de exigir la intervención notarial que, a su vez, acredite la presencia física e inmediata del Pagaré

---

[88] *Cruz Consulting v. Legado*, supra, pág. 518.
[89] *Recurso Gubernativo*, pág. 4.

Hipotecario al momento de otorgamiento de toda escritura que envuelva [p]agarés [h]ipotecarios". (Énfasis suplido).[90]

No vemos cómo concluir que la Asamblea Legislativa actuó impropiamente al imponer estos requisitos en la Ley Hipotecaria para la inscripción de pagarés hipotecarios y otros instrumentos negociables. Tampoco entendemos que estos requisitos responden a un error o inadvertencia de nuestra legislatura; máxime cuando de la propia Exposición de Motivos surge lo contrario. Según hemos discutido anteriormente, nuestra Asamblea Legislativa aprobó la nueva Ley Hipotecaria con el fin de modernizar nuestro sistema registral y proveer mayor sencillez y claridad en las fórmulas de inscripción.[91] Conforme a estos fines, nuestra legislatura expresó que

[e]n reconocimiento al profesionalismo y alto sentido ético del notariado puertorriqueño, **se elimina el requisito de someter documentos complementarios,** como por ejemplo poderes, junto a documentos que se presentan al registro. **Bastará que el notario autorizante bajo su firma, signo, sello y fe notarial certifique que ha tenido ante sí el documento en cuestión para que se acepte el documento principal que interesa se califique e inscriba".** (Énfasis suplido).[92]

Durante su trámite legislativo, la Ley 210-2015 contó con un extenso insumo de la comunidad jurídica y lega. En lo aquí pertinente, de su amplio historial legislativo surge

---

[90] *Recurso Gubernativo*, pág. 7.
[91] Exposición de Motivos, Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210-2015, 30 LPRA sec. 6001 *et seq*.
[92] Exposición de Motivos, Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210-2015, 30 LPRA sec. 6001 *et seq*.

que **la ponencia de la Asociación de Hogares de Puerto Rico (Asociación) precisamente sugirió eliminar del Art. 89 el requisito objeto de esta controversia.**[93] Es decir, que el notario tenga que dar fe que tuvo el pagaré original ante sí al otorgar una escritura de modificación. La Asociación razonó que dicho requisito "resulta en un impedimento para la autorización de dichas escrituras", toda vez que, en la inmensa mayoría de los casos, los pagarés hipotecarios a ser modificados no se encuentran inmediatamente disponibles al momento de otorgar la escritura de modificación.[94] La Asociación sostuvo que estos pagarés usualmente están guardados en alguna bóveda por lo que la logística para identificarlos, obtenerlos, y transportarlos a donde el notario solo para ese día en particular resultaba ser demasiado oneroso para el sector bancario. No obstante, por más persuasivo o práctico que parezca la sugerencia, lo cierto es que la legislatura tuvo ante su consideración la redacción del Art. 89 propuesta por la Asociación y no la adoptó. Por lo tanto, no hay espacio para atribuir la redacción del Art. 89 a error o inadvertencia del legislador. En tales circunstancias es forzoso concluir que la Asamblea Legislativa decidió imponer este requisito.

Según surge de la Exposición de Motivos de la Ley Hipotecaria, esta intención legislativa se valida en varios

---

[93] Asociación de Hogares de Puerto Rico, ponencia del 17 de junio del 2015.
[94] Íd.

otros artículos de la Ley Hipotecaria que requieren al notario tener un documento original en su presencia física inmediata y dar fe de ello. A modo de ejemplo podemos señalar el Art. 10 de la Ley Hipotecaria ──donde el acto o contrato que se pretende inscribir requiere la existencia de algún documento complementario que acredite las facultades representativas o autoridad del compareciente── **el notario relacionará y certificará bajo su fe notarial que los tuvo ante sí y que éstos cumplen con todos los requisitos de ley.**[95] Al acreditar bajo su fe notarial que los tuvo ante sí, no será necesario que se presenten estos documentos. Esta situación es común en el caso de personas jurídicas, donde se requiere mostrar al notario alguna resolución o certificación de que la persona quien comparece es en efecto una persona autorizada por la entidad. De igual forma, luego de una venta por subasta el Art. 112 de la Ley Hipotecaria le requiere al notario hacer constar en la escritura de traspaso una dación de fe de haber inutilizado y cancelado el pagaré garantizado con la hipoteca objeto de ejecución, que necesariamente requiere tener el pagaré original en su presencia física inmediata.[96]

En su función de calificar documentos conforme al principio de legalidad inmerso en nuestro sistema registral, los registradores de la propiedad deben cerciorarse de que

---

[95] 30 LPRA sec. 6017.
[96] 30 LPRA sec. 6149.

los documentos que ingresan al Registro cumplen con las leyes aplicables.[97] En el caso de marras la ley aplicable es la Ley Hipotecaria, siendo esta la que regula los requisitos legales del documento que se presentó al registro. Consecuentemente, los requisitos legales para inscribir una escritura de modificación de pagaré e hipoteca se encontraban en el Art. 89 de la Ley Hipotecaria. Mientras, el Art. 2-117 de la LTC es pertinente únicamente a los fines de modificar la obligación principal que consta en el instrumento negociable. Es decir, para alterar la realidad extra-registral. Sobre estos extremos la Ley Hipotecaria es clara. Para autorizar la inscripción en el Registro de una escritura de modificación de hipoteca, el Registrador debe cerciorarse de que el notario autorizante dio fe notarial de que tuvo ante sí el pagaré original y que tomó razón de los cambios de dicho documento, conforme al Art. 89. **En el presente caso, es un hecho incontrovertido que el notario autorizante no dio fe notarial de que tuvo ante sí el pagaré original y que tomó razón de los cambios de dicho documento, por lo tanto, no cumplió con el Art. 89 de la Ley Hipotecaria.** En vista de lo anterior, actuó correctamente la Registradora al denegar la inscripción de la Escritura Núm. 86 de Modificación de Hipoteca, otorgada el 22 de noviembre de 2019 por FirstBank y Delmar Investment, S.E., ante el Notario José M. Biaggi Landrón, al asiento 2019-125655-PO01.

---

[97] *Rigores v. Registrador*, 165 DPR 710, 719-720 (2005).

**IV.**

Por los fundamentos expuestos en la *Opinión* que antecede, se dicta Sentencia confirmando la calificación final de Anotación Preventiva Denegatoria de la Registradora de la Propiedad.

Se dictará sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Firstbank Puerto Rico<br><br>Recurrente<br><br>v.<br><br>Registradora de la Propiedad de Ponce, Sección Ponce I, Hon. María Rodríguez Cintrón<br><br>Recurrida | RG-2020-0005 | *Recurso Gubernativo* |

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de septiembre de 2021.

Por los fundamentos expuestos en la Opinión que antecede, la que se hace formar parte íntegra de la presente Sentencia, se dicta Sentencia confirmando la calificación final de Anotación Preventiva Denegatoria de la Registradora de la Propiedad.

Notifíquese de inmediato.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez concurre sin opinión escrita.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo